# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE H. CERVANTES, | CASE NO. 1:11-cv–00387-BAM PC |
| Plaintiff, | ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM |
| v. | |
| DARREL G. ADAMS, et al., | (ECF No. 1) |
| Defendants. | ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL |
| / | THIRTY-DAY DEADLINE |

**I.    Screening Requirement**

Plaintiff Jose H. Cervantes is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is the complaint, filed March 7, 2011. (ECF No. 1.) On April 6, 2011, Plaintiff consented to the jurisdiction of the Magistrate Judge. (ECF No. 6.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II.    Complaint Allegations

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is incarcerated at California State Prison ("CSP"), Corcoran. Plaintiff alleges that he was validated as an associate of the Mexican Mafia ("EME") prison gang based upon source items that do not serve as evidence of gang association, and the due process protections of CDCR's gang validation protocol.[1] This action is brought against Defendants Adams, Hubbart, Garza, Torres, Juarez, Bonilla, Yerena, Lunes, Billiou and Ostrander. Plaintiff is seeking compensatory and punitive damages, injunctive relief, and appointment of counsel.

On November 22, 2006, while housed at Kern Valley State Prison, an institutional gang investigation against Plaintiff (aka Thumper, a non-validated member of the Glendale Westside Locos 13 Street Gang) was completed. Plaintiff states that there is insufficient information to

---

[1] In his complaint, Plaintiff argues that the Superior Court denied Plaintiff's claims based upon improper factors and misapplication of CDCR's Code of Regulations. Therefore, it appears that Plaintiff's claims may have previously been adjudicated by the State Court and res judicata may apply.

2

1  validate him as a member of the EME prison gang.

2  Four source items were used to validate Plaintiff as a gang member: 1) a tattoo on Plaintiff's right knee that reads Varrio Locos 13;[2] 2) a drawing consisting of three dots and two bars that stands for the number 13;[3] 3) a letter intercepted by prison officials that was addressed to a validated associate who had overall authority over EME activities for Corcoran's general population which stated that Plaintiff was taking over the leadership role of the general population when the current leader was placed in administrative segregation; and 4) a kite[4] intercepted on the administrative segregation exercise yard that was identified as being authored by Plaintiff.[5] Plaintiff argues that the number 13 is not a gang symbol for him, but a symbol of his Mexican American heritage, the letter was not authored by Plaintiff and contained hearsay, and there is no evidence that Plaintiff wrote the kite. Plaintiff states that, even if the evidence shows that he wrote the kite, CDCR did not reinvestigate validation when he was transferred to CSP-Corcoran.

Plaintiff was interviewed regarding the source items on November 28, 2006. On November 30, 2006, Officer Yerena interviewed Plaintiff to allow him an opportunity to dispute any of the source items. Plaintiff submitted two pages of notes as rebuttal to his gang validation.[6] Plaintiff's gang validation package was completed by Defendant Garza on November 30, 2006. Plaintiff filed an inmate appeal on April 15, 2007, and was interviewed again by Defendant Garza, thus denying

---

[2] On March 26, 2005, it was observed that Plaintiff had a tattoo on his right knee that was indicative of his association with the EME Prison Gang. The tattoo is the Matlactlomei symbol of three dots over two lines. CDCR recognizes this symbol as being utilized by members and associates of the EME prison gang. (ECF No. 1 at 14.)
   All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] During a search of Plaintiff's cell on July 19, 2004, a drawing was found containing the EME prison gang symbol, Matlactlomei of three dots over two lines, and the letter M. These symbols are recognized as being used by members of the EME prison gang. (Id. at 15.)

[4] A kite is a note written by an inmate.

[5] This kite was intercepted when an unknown inmate threw it to inmates on the ASU exercise yard. The author of the kite was identified as Plaintiff. In the kite, Plaintiff acknowledges previously having received communications from Guzman, a validated EME member, and requests permission to take the leadership role on one of the general population facilities. The note also provided details of gang activity occurring on the general population. (Id. at 12.)

[6] During the interview, Plaintiff stated that he did not wish to make a statement, but provided two pages of notes to serve as his rebuttal against validation. (Id. at 13.)

Plaintiff a fair and unbiased hearing.

Plaintiff claims that 1) prison officials violated due process by failing to have a fair hearing on his inmate grievance; 2) the symbols used to validate Plaintiff are not evidence of gang activity and infringe upon his First Amendment free speech rights; 3) there is no evidence Plaintiff violated any gang activity rules or regulations; 4) prison officials did not consider his rebuttal and denied him a fair hearing; 5) the source items do not meet the reliability test as required by CDCR regulations; 6) placing Plaintiff in administrative without evidence of current gang activity violates Plaintiff's due process rights; 7) no rule violations were issued although the source items allege violations of departmental regulations; 8) the written material used is hearsay and not supported by evidence; 9) Plaintiff's state created liberty interests were violated when prison officials failed to provide him copies of confidential information used against him; and 10) being required to spend six or more years in the SHU for association is itself cruel and unusual punishment in violation of the Eighth Amendment.

For the reasons stated, Plaintiff fails to state a cognizable claim for relief. Because the Court finds that Plaintiff's gang validation was based upon some evidence, and he received all that is required under due process, those claims based upon his initial designation as a gang member shall be dismissed, with prejudice.

**III.   Discussion**

    **A.   Deliberate Indifference - Conditions of Confinement**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk

by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994).

To the extent that Plaintiff is attempting to pursue an Eighth Amendment claim based on the facts that he was placed in the SHU and that he is being retained in the SHU indefinitely, Plaintiff's claim fails. The indefinite confinement of Plaintiff in segregation does not give rise to a separate claim for relief under the Eighth Amendment. Plaintiff's complaint does not set forth any facts supporting a claim that any of the named defendants knowingly disregarded a substantial risk of harm to his health or safety. In the absence of sufficient facts to support a plausible claim against one or more of the defendants, Plaintiff fails to state a claim.

**B.** **Due Process**

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005). In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. Id. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480, 115 S. Ct. 2293, 2298 (1995). However, a state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84, 115 S. Ct. at 2300. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 484, 115 S. Ct. at 2300).

**1.** **Gang Validation**

The Supreme Court has held that indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposed an "atypical and significant hardship within the correctional context." Wilkinson, 545 U.S. at 223-25, 125 S. Ct. at 2394-95. Since indefinite placement in California's SHU may render an inmate ineligible for parole consideration, this may create a liberty interest in not being placed indefinitely in the SHU which would entitle prisoners to the minimal procedural protections upon initial validation and subsequent inactive reviews. See Ellis v. Cambra, No. 1:02-cv-05646-AWI-SMS PC, 2010 WL 4137158, *8 (E.D.Cal.

5

Oct. 19, 2010).

### a. **Validation Process**

"It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). To that end, California has developed procedures to identify and segregate gang members. See Cal. Code Regs., tit. 15 § 3378. To comply with due process, prison officials must provide the inmate with "some notice of the charges against him, and the opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Bruce, 351 F.3d at 1287. Here, Plaintiff was notified of the charges against him, was informed of the evidence indicating his status as a gang member, and was given an opportunity to respond. That procedure satisfied due process. Barnett v. Centoni, 31 F.3d 813, 815 (1994).

Rather than verbally presenting his arguments, Plaintiff chose to present a rebuttal argument. While Plaintiff alleges that his rebuttal evidence was not considered, it is equally plausible that due to the amount of evidence showing gang activity, nothing set forth in the rebuttal was sufficient to overcome the totality of evidence supporting the conclusion that he was a gang associate. Plaintiff received that procedure which was required under the Fourteenth Amendment. Wilkinson, 545 U.S. at 228-29, 125 S. Ct. at 2397. Plaintiff fails to state a cognizable claim based upon the hearing provided.

### b. **Some Evidence**

Plaintiff claims that the source items used to validate him as a EME member do not establish some evidence or current gang membership, lack reliability, and are based on hearsay. In finding that Plaintiff was a gang associate, prison officials relied on gang symbols that were displayed in Plaintiff's tattoo and artwork found in Plaintiff's cell, the letter stating that Plaintiff would be running the gang activity in the general population, and the kite found to be authored by Plaintiff that discussed gang activity.

California's decision to classify gang members for placement in SHU is not a disciplinary measure, but is designed to preserve order in the institution and protect inmates and is a matter of administrative discretion. Bruce, 351 F.3d at 1287. Therefore, the decision to place an inmate on

6

indeterminate SHU status based on gang affiliation must be supported by "some evidence." Id. The evidence relied on must have some indicia of reliability. Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990).

Under the "some evidence" standard "the relevant question is whether there is any evidence in the record to support the conclusion." Bruce, 351 F.3d at 1287 (quoting Superintendent v. Hill, 472 U.S. 445, 455-56, 105 S. Ct. 2768 (1985)). The "some evidence" standard sets a low bar consistent with the recognition that the assignment of inmates within the prison system is "essentially a matter of administrative discretion." Bruce, 351 F.3d at 1287. A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard. Id. at 1288. Federal law does not require that the evidence relied upon be such that any conclusion other than the one reached by the decision maker is precluded, Hill, 472 U.S. at 457, 105 S. Ct. at 2775, and in reviewing the evidence relied upon, the Court is not to substitute its judgment on matters such as this for the determinations of those charged with the formidable task of running a prison, Zimmerlee v. Keeney, 831 F.3d 183, 186 (9th Cir. 1987).

Plaintiff claims that the written material contains hearsay and is not supported by the evidence. The use of hearsay evidence is not precluded in prison disciplinary hearings and hearsay evidence serves a useful purpose in the proceedings. Madrid v. Gomez, 889 F.Supp. 1146, 1277 (N.D.Cal. 1995). The letter which was intercepted by prison officials was sent to a validated EME member housed in CSP-Corcoran SHU. The letter was sent to inmate Gonzalez, who was the secretary of inmate Guzman. Inmate Guzman had overall authority over EME activities in the general population. The letter was written by an inmate who had recently been confined to the SHU, and had a leadership role over EME inmates in the general population. The letter stated that Plaintiff would be taking over the leadership role in the general population since the author had been placed in the SHU. There is nothing to indicate that prison officials were meant to intercept this communication. The fact that this was a communication between gang members who control the gang activity at the prison supports the conclusion that this was reliable information. This evidence alone is sufficient to meet the "some evidence" standard.

The kite, which was identified as being authored by Plaintiff, was addressed to inmate

Guzman, the individual with overall authority over EME members in the general population. In the kite, the author acknowledges having previously received communications from Guzman, and asks for permission to take on the leadership role in the general population. Additionally, details of gang activity occurring in the general population were also discussed. The contents of the kite determined to have been written by Plaintiff and the letter, support the determination that Plaintiff was in contact with validated EME members and was maneuvering for control of the yard. The fact that this was a kite, and not intended to be read by prison officials, supports the conclusion that this was reliable information. While Plaintiff states there is no evidence that he wrote the kite, in reviewing the evidence, the Court is not to substitute its judgment for the determinations of those charged with the task of running the prison. Zimmerlee, 831 F.3d at 186.

Finally, Plaintiff argues that the symbols used to identify him as a gang member are not gang symbols, but are symbols of his heritage. Prison officials have determined that the symbol "3 dots 2 lines - 3 dots 2 bars is a part of the Mayan numerical system and represents the 13th letter ("M") of the alphabet. The letter "M" is used by the Surenos (Southern Hispanics) as an identifier to show their loyalty/association to the MEXICAN MAFIA prison gang." (ECF No. 1 at 14.) The tattoo on Plaintiff's knee contains the numerical symbol and the name of a street gang. (Id. at 6, 14.) The drawing found in Plaintiff's cell included both the numerical symbol and the letter M. (Id. at 15.) Although Plaintiff states that the symbol is not gang related, the Court notes that his tattoo contains the symbol with the name of the street gang he is affiliated with. Additionally, the use of this Mayan symbol to identify gang membership is well documented in case law. Martinez v. Fischer, 2:10-cv-00366-GGH, 2011 WL 4543191, *8 (E.D.Cal. Sept. 28, 2011); Vasquez v. Stainer, 2:09-cv-03029-AHM (SS), 2011 WL 3565056, *2 (C.D.Cal. July 20, 2011); Ruiz v. Fischer, 3:07-cr-00326-MHP, 2010 WL 4807052, *2 (N.D.Cal. Nov. 18, 2010); Aguillon v. Evans, 2:08-cv-01748-SJO (OP), 2010 WL 2384861, *26 (C.D.Cal. Mar. 15, 2010). These symbols are sufficient to meet the "some evidence" standard.

Plaintiff claims that it is a violation of his due process rights to confine him to the SHU based on the remoteness of the activity. The investigation was completed on November 22, 2006, and Plaintiff's hearing occurred on November 30, 2006. The most recent information relied on was

dated March 26, 2005. Since gang members and their associates are a threat to prison authority and inmates who become gang members join "for life", the inmate does not have to have affirmatively engaged in recent gang activity to be confined to the SHU. Madrid, 889 F.Supp. at 1278.

The Court finds that there was "some evidence" of Plaintiff's involvement in gang activity, and Plaintiff has failed to state a cognizable claim based on the evidence used to classify him as a gang associate.

### 2. Grievance Procedure

Plaintiff claims that his due process rights were violated because he was not given a fair hearing on his administrative appeal. There is no liberty interest in a prison grievance procedure as it is a procedural right only. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley, 997 F.2d at 495. Plaintiff's allegation that his administrative review was conducted by Defendant Garza fails to state a claim.

### 3. Failure to Conduct New Investigation Upon Transfer

Plaintiff alleges that his due process rights were violated when he transferred to CSP-Corcoran because a new investigation was not conducted. Once an inmate has been validated as a prison gang member, the inmate must receive periodic reviews of his placement in administrative segregation. Hewitt v. Helms, 459 U.S. 460, 477, n.9, 103 S. Ct. 864, 874 (1983) overruled on other grounds by Sandin, 515 U.S. 472, 115 S. Ct. 2293. There is no requirement that a new investigation be conducted when Plaintiff transfers to a different institution and Plaintiff fails to state a cognizable claim.

### 4. Failure to Provide Confidential Information

Plaintiff claims that his state created due process rights were violated because Defendants failed to provide copies of confidential information used against him. A state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. at 483-84, 115 S. Ct. at 2300. However, these interests are only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan, 83 F.3d at 1088

(quoting Sandin, 515 U.S. at 484, 115 S. Ct. at 2300). Failure to provide confidential information does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life", and therefore, there is no state created due process interest in confidential information used against Plaintiff in determining his gang status. Plaintiff has failed to state a cognizable claim based upon the failure to provide copies of the confidential information used in determining his gang affiliation.

### C. Title 15

Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986)). There is no independent cause of action for a violation of Title 15 regulations. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997), quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996). Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)). Plaintiff cannot state a claim for a violation of his federal rights based upon a prison officials failure to comply with Title 15, nor is it necessary for Plaintiff to be charged with violating prison regulations in order for him to be validated as a prison gang member.

### D. First Amendment

The Supreme Court has long recognized that "(l)awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060 (1948) overruled on other grounds by McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454 (1991); see also Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974); Wolff v. McDonnell, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974 (1974). "The fact of confinement and the needs

of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-38 (1977) (quoting Price, 334 U.S. at 285, 68 S. Ct. at 1060). While an inmate does retain First Amendment rights that are not inconsistent with his status as a prisoner, a regulation that impinges upon First Amendment rights is valid if it is reasonably related to a legitimate penological interest. Shaw v. Murphy, 532 U.S. 223, 229, 121 S. Ct. 1475, 1479 (2001). Preserving internal security is one of the most legitimate penological goals. Overton v. Bazzetta, 539 U.S. 126, 133, 123 S. Ct. 2162, 2168 (2003). While Plaintiff alleges that his free speech rights are infringed by using the Matlactlomei symbol to validate him as a gang associate, prison officials have identified this symbol as being used by gang members to show their allegiance to their gang, and the right to possess such symbols would be inconsistent with Plaintiff's status as a prisoner.

### E. Supervisory Liability

Plaintiff attempts to bring claims against certain defendants based upon the supervisory position they hold within CDCR. Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129 S. Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

## IV. Motion for Appointment of Counsel

Plaintiff has requested the appointment of counsel. The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S. Ct. 1814, 1816 (1989). In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997). Without a reasonable method of securing and compensating counsel,

this court will seek volunteer counsel only in the most serious and exceptional cases.

In the present case, the Court does not find the required exceptional circumstances. See Rand, 113 F.3d at 1525. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This court is faced with similar cases almost daily. Therefore, Plaintiff's request for the appointment of counsel shall be denied.

## V.     Conclusion and Order

For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for a violation of his constitutional rights. Plaintiff is granted leave to file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 129 S. Ct. at 1948-49. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.  Plaintiff's due process claim based upon his initial hearing and classification as a gang associate is dismissed, with prejudice;

3.  Plaintiff's complaint, filed March 7, 2011, is dismissed for failure to state a claim upon which relief may be granted under section 1983;

4.  Plaintiff's motion for appointment of counsel is denied;

5.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

6.  If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **March 9, 2012**              /s/ **Barbara A. McAuliffe**
                                        UNITED STATES MAGISTRATE JUDGE